Roosevelt N. Nesmith, Esq  (008271997)
**LAW OFFICE OF ROOSEVELT N. NESMITH LLC**
400 Broadacres Drive, Suite 260
Bloomfield, New Jersey 07003
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

***Counsel for Plaintiff and the***
***Putative Collective and Class***
***[additional counsel on signature page]***

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

| | |
|---|---|
| MATTHEW DURKEL, individually and on behalf of all others similarly situated, | Civil Action No. |
| Plaintiff, | **COMPLAINT** |
| -vs- | Collective and Class Action |
| | Jury Trial Demanded |
| NOVO BUILDING PRODUCTS, LLC, NOVO  DISTRIBUTION, LLC, and THE EMPIRE COMPANY, LLC, | Documents Filed Electronically |
| Defendants. | |

### <u>INTRODUCTION</u>

Plaintiff MATTHEW DURKEL, individually and on behalf of all other

similarly situated persons, ("Plaintiff") files this collective and class action complaint against

NOVO BUILDING PRODUCTS, LLC ("Novo Building"), and its subsidiary companies,

NOVO DISTRIBUTION, LLC ("Novo Distribution") and THE EMPIRE COMPANY, LLC

("Empire," and collectively with Novo Building and Novo Distribution, "Defendants"),

seeking all available relief for unpaid regular and overtime wages pursuant to the Fair Labor

Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA"), and the New York Labor Law ("NYLL") Article 6, §§ 190 et seq., and Article 19, §§ 650 etseq., and the supporting New York State Department of Labor Regulations. .

### THE PARTIES

1.　　Plaintiff MATTHEW DURKEL resides in Medford, New York.  DURKEL began his employment with defendant Empire as an "Account Service Manager" ("ASM") in 2010 and worked in that position until October 2019 when he was promoted to "Area Service Support Manager" ("ASSM").  In or about September 2022, Defendants changed the title of the ASSM position to "Regional Service Representative" ("RSR")  DURKEL worked as an RSR until his employment ended with Defendants in February 2023.

2.　　DURKEL'S work as an Account Service Manager, Area Service Support Manager and Regional Service Representative, was primarily stocking shelves with replenishment orders of Defendants' products, merchandising product within stores, and culling and writing credits for damaged or defective merchandise at customer accounts, such as Lowes Home Centers.  As an ASM DURKEL performed these duties at Lowes stores primarily in the Long Island, New York area.  As an ASSM, DURKEL performed the same duties at Lowes stores over a larger geographic area, covering parts of New York, New Jersey and Pennsylvania. As an RSR DURKEL performed the same duties over the same geographic area as an ASSM.

3.　　As an ASM DURKEL routinely worked an average of five hours of uncompensated overtime each week and was required to perform off-the-clock work at the direction of and for the benefit of Defendants.  As an ASSM DURKEL routinely worked an average of 15 hours of uncompensated overtime each week and was required to perform off  the clock work at the direction of and for the benefit of Defendants.

4.    Defendant Novo Building Products is a manufacturer and distributor of building materials organized under the laws of Delaware, with its principal office located at 8181 Logistic Drive, Zeeland, Michigan.  Defendant Novo Building Products is the parent company of Defendant Novo Distribution, defendant Empire and affiliates, Southwest Moulding Company, Ornamental Decorative Millwork, and LJ Smith Stair Systems.  Defendant Novo Building Product's predecessor company, NACS USA, Inc., was purchased and renamed Novo Building Products, LLC, in December 2016.  Upon information and belief, Defendant Novo Building Products issued payroll checks in its name to employees in the positions of ASSM and RSR, including Plaintiff DURKEL, during the relevant period.

5.    Defendant Empire is a manufacturer of wood moldings and other specialty lumber parts organized under the laws of the State of Michigan, with its principal place of business at 8181 Logistic Drive, Zeeland, Michigan.  Upon information and belief, Defendant Empire issued payroll checks in its name to employees in the position of ASM and ASSM, including Plaintiff DURKEL, during the relevant period.

6.    Defendant Novo Distribution is a distributor of specialty millwork products servicing lumberyards, door shops, and home centers organized under the laws of the State of Michigan, with its principal place of business at 818 Logistic Drive, Zeeland, Michigan. Defendant Empire filed a Certificate of Amendment with the State of New Jersey amending its Certificate of Formation to change the name of Empire to Novo Distribution, LLC on October 2, 2020.

## JURISDICTION

7.    This Court has jurisdiction over Plaintiff's FSLA claims pursuant to 29 U.S.C. § 216(b) and 28 U.S.C. § 1331.  Jurisdiction over the state law claims is pursuant to 28 U.S.C. §

1332(d) and the Class Action Fairness Act, 28 U.S.C. §§ 1332, 1453 and 1711-1715, and 28 U.S.C. § 1367. The parties are diverse and, on information and belief, the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

8.    Plaintiff is a citizen of a State different from that of Defendants.

9.    Venue is proper pursuant to 28 U.S.C. § 1391, because a substantial part of the events or omissions giving rise to the claims occurred in this District.

10.    Plaintiff resides in New York.

11.    Plaintiff regularly conducted business on behalf of Defendants in this District.

12.    Defendant Novo Building regularly conducts business in this district.

13.    Defendant Novo Distribution regularly conducts business in this district.

14.    Defendant Empire regularly conducted business in this district during the relevant period.

## CLASS DEFINITIONS

15.    Plaintiff MATTHEW DURKEL brings Count 1 of this action pursuant to 29. U.S.C. § 216(b) as a FLSA collective on his own behalf and on behalf of the following collective of potential opt-in litigants:

> All current and former employees of Defendants in the United States employed as an Area Service Support Manager at any time during the Collective Period (the "ASSM Collective").

16.    Plaintiff MATTHEW DURKEL brings Count 2 of this action pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3) on his own behalf and on behalf of a class defined as

> All current and former employees of Defendants in the state of New York employed as an "Account Service Manager" or "Area Service Support Manager" during the relevant NYLL statutory period (the "New York Class").

17.    Plaintiff DURKEL alleges Defendants violated the FSLA and the NYLL by misclassifying him and similarly situated employees as exempt "Area Service Support Managers" and (1) failing to pay such employees for all hours worked; (2) failing to pay them overtime wages in a timely manner, and (3) failing to pay them the legally required amount of overtime compensation required by law for all hours works over forty (40) in a work week. Plaintiff, and all persons similarly situated, are entitled to unpaid wages from Defendants for all hours worked by them, as well as unpaid overtime wages for hours in excess of forty (40) hours worked per work week.

18.    Plaintiff DURKEL alleges Defendants violated the NYLL by misclassifying him as and similarly situated employees as exempt "Account Service Managers" and (1) failing to pay him for all hours worked; (2) failing to pay him overtime wages in a timely manner, and (3) failing to pay him the legally required amount of overtime compensation required by law for all hours works over forty (40) in a work week. Plaintiff are entitled to unpaid wages from Defendants for all hours worked by them, as well as unpaid overtime wages for hours in excess of forty (40) hours worked per work week.

19.    Plaintiff reserves the right to redefine the ASSM Collective prior to conditional certification and the New York Class prior to certification, and thereafter as necessary.

## THE PARTIES

20.    Plaintiff, MATTHEW DURKEL, is an individual residing in Medford, New York.

21.    Plaintiff DURKEL performed work for Defendants in New Jersey, New York and Pennsylvania. He began his employment with Defendants in 2010. From 2010 to October 2019, DURKEL was in a position nominally titled "Account Service Manager." Plaintiff accepted a

position with Defendants titled "Area Service Support Manager" in October 2019.  Defendants changed the title of the position from "Area Service Support Manager" to "Area Service Support Representative" in September 2022.  Plaintiff's employment with Defendants ended in February 2023.

22.    Plaintiff DURKEL performed the same work as an "Account Service Manger," "Area Service Support Manager" and an "Area Service Support Representative."

23.    Plaintiff DURKEL regularly worked in excess of forty (40) hours per work week without overtime compensation in the positions of "Account Service Manager" and "Area Service Support Manager" as required by FLSA and NYLL.  In these positions DURKEL also worked hours "off the clock" and compensable travel time without receiving wages from Defendants as required by FLSA and/or NYLL.

24.    At all times relevant hereto, Defendants have been an employer within the meaning of Section 3(d) of the FLSA.

25.    At all times relevant herein, Defendants have been an enterprise within the meaning of Section 3(r) of the FLSA.

26.    At all times relevant herein, Defendants have been an enterprise engaged in commerce within the meaning of Section 3(s)(1) of the FLSA because it has employees engaged in commerce.

27.    Defendants have had a gross volume of sales made or business done of at least $500,000 per annum.

28.    At all times relevant herein, Plaintiffs and similarly situated employees were engaged in commerce.

29.     Defendant Novo Building Products issued paychecks to Plaintiff, and all similarly situated employees during his employment.

30.     Defendant Empire issued paychecks to Plaintiff during his employment.

31.     Defendants directed the work of Plaintiff and similarly situated employees and benefitted from work performed that Defendants suffered or permitted from him.

32.     Plaintiffs and similarly situated employees worked in excess of 40 hours per work week, without receiving overtime compensation as required by the FLSA and the NYLL.

33.     Plaintiffs and similarly situated employees also worked regular *i.e.*, straight time., hours without receiving compensation as required by the NYLL.

34.     Plaintiffs and similarly situated employees also suffered compensable travel time for which Defendants failed to pay wages as required by the FLSA and the NYLL.

35.     Pursuant to Defendants' policy, pattern and/or practice, Defendants failed to pay Plaintiff, and all similarly situated employees, for all hours worked, and proper overtime wages for hours they worked for Defendants' benefit in excess of forty (40) hours in a workweek.

## FACTUAL ALLEGATIONS

36.     Plaintiff DURKEL was employed by Defendants as an "Account Service Manager" from 2010 to in or about October 2019.

37.     Plaintiff and numerous other similarly situated employees classified as exempt in the positions of "Account Service Managers" worked on maintaining inventory of Defendants' products at customer accounts, such as Lowes Home Centers.  Although Defendants classified Plaintiff and other similarly situated employees in the ASM position as exempt, their day-to-day work consisted solely of visiting retail locations to undertake tasks such as stocking shelves with

replenishment orders, merchandising product within the store, culling and writing credits for damaged or defective merchandise, and addressing customer concerns.

38.     Plaintiff DURKEL was promoted and thereafter employed by Defendants as Area Service Support Manager from in or about October 2019 to in or about September 2022.

39.     Plaintiff and numerous other similarly situated employees classified as exempt in the positions of "Area Service Support Managers" performed the same work as ASMs, but over a larger geographic area -- maintaining inventory of Defendants' products at customer accounts, such as Lowes Home Centers.  Although Defendants classified Plaintiff and other similarly situated employees in the ASSM position as exempt, their day-to-day work consisted solely of visiting retail locations to undertake tasks such as stocking shelves with replenishment orders, merchandising product within the store, culling and writing credits for damaged or defective merchandise, and addressing customer concerns.

40.     Defendants changed the title of plaintiff DURKEL's position from "Area Service Support Manager" to "Regional Service Representative" in September 2022.  Plaintiff DURKEL performed the same work in the positions titled ASSM and RSR.  Defendants began to compensate Plaintiff for overtime hours upon changing the title of the ASSM position to RSR in September 2022.

41.     Defendants maintained control, oversight, and discretion over their operations, including employment practices, with respect to Plaintiff and similarly situated employees.

42.     Plaintiff and members of the putative collective and class performed their work in the normal course of Defendants' business and their work was integrated into Defendants' business.

43.     Plaintiff and numerous other similarly situated employees classified as exempt in the positions of "Account Service Manager" and "Area Service Support Managers" worked on maintaining inventory of Defendants' products at customer accounts, such as Lowes Home Centers.  Although Defendants classified Plaintiff and other similarly situated employees in the ASM and ASSM positions as exempt, their day-to-day work consisted solely of visiting retail locations to undertake tasks such as stocking shelves with replenishment orders, merchandising product within the store, culling and writing credits for damaged or defective merchandise, and addressing customer concerns.

44.     During the relevant time period set forth herein, Defendants misclassified numerous employees, including Plaintiff DURKEL, as exempt for the purpose of avoiding the payment of overtime wages, as required by law.  Plaintiff DURKEL and many other employees were classified by Defendants as exempt and were paid, based upon a forty (40) hour work week. Plaintiffs and other employees' workloads and job assignments, as dictated by Defendants, in fact required Plaintiff DURKEL and the other employees in the ASM position to work, on average, 45 hours per week, and employees in the ASSM and RSR positions to work, on average, 55 hours per week.  Defendants knew or should have known that Plaintiff and other similarly situated employees in the ASM and ASSM positions worked in excess of forty (40) hours per week, for which they were not paid time and a half for such work.

45.     Consistent with Defendants' policy, pattern and/or practice, Plaintiff and members of the putative ASM Collective and New York Class routinely worked in excess of 40 hours per work week without being paid overtime wages and were not paid for compensable travel time in violation of the FLSA and NYLL.  Plaintiff also was not compensated for all regular hours worked as required by the NYLL.

46.    Defendants do not maintain offices for Account Service Managers or Area Service Support Managers.  The employees in these positions commute from home directly to their first store location, which is scheduled by their managers.

47.    Employees in the positions of Account Service Managers and Area Service Support Managers were required to clock in when they reached a store, and to clock out when they departed a store.  ASMs and ASSMs were not on the clock for any of their travel time to their first store location, for their travel between stores in the course of their workday, or for their travel from their last store location to home.

48.    Account Service Managers and Area Service Support Managers were not compensated for any of their extraordinary commuting time.  ASMs and ASSMs often spent more than one hour commuting each morning to their first store location.  The employees in these positions were not compensated for any commuting time to their first store, for their travel between stores; or after departing the last store for home.  Many ASMs and ASSMs commuted on average more than one hour traveling home from their last store location.

49.    In a January 1999 opinion letter, the Department of Labor ("DOL") considered "whether certain travel time and other activities performed by home-based employees" who worked in the field were "hours worked" for purposes of the FLSA. See 1999 DOLWH LEXIS 9 at *1.  The DOL determined that an employer's policy that paid home based employees for all but one hour of travel time from home was acceptable under 29 C.F.R. §785.35. See id. at *4. The DOL opined:

> [T]ravel time would not be compensable, unless the time involved is extraordinary. For example, where [an employee's] commute to the first job site in the morning takes four hours, [the DOL] would consider the greater portion of travel time compensable under the principles described in 29 C.F.R. 785.37. That rule allows a portion of the total commute time to be considered non-compensable home-to-work travel. If the employer treated three of the

four hours as compensable travel, [the DOL] would not question such practice. *Id*.

50.     Defendants failed to compensate Account Service Managers and Area Service Support Managers for all compensable travel time of their extraordinary daily commutes.

51.     Plaintiff DURKEL was employed by Defendants as an "Account Service Manager" from 2010 to October 2019.    As an "Account Service Manager," Plaintiff DURKEL, upon information and belief, was misclassified as an "Exempt Employee," who was regularly required to, and did in fact, work in excess of forty (40) hours per week and was not paid for all hours worked and was not paid overtime wages.  Plaintiff DURKEL was paid a salary of $46,000 annually as an Account Service Manager.

52.     Plaintiff DURKEL was employed by Defendants as an "Area Service Support Manager" from October 2019 to in or about September 2022.    As an "Area Service Support Manager," Plaintiff DURKEL, upon information and belief, was misclassified as an "Exempt Employee," who was regularly required to, and did in fact, work in excess of forty (40) hours per week and was not paid for all hours worked and was not paid overtime wages.  Plaintiff DURKEL was paid a salary of $51,684 annually as an Area Service Support Manager.

53.     Defendants misclassified Plaintiff and other similarly situated employees employed as Account Service Managers and Area  Service Support Managers as exempt from the FLSA and the NYLL apparently on the grounds that they (a) are  management and thus, subject to the "executive" exemption; (b) sales representatives and thus, subject to the "outside sales" exemption; or (c) work in an administrative capacity and thus subject to the "administrative" exemption under the FLSA and the NYLL.

54.     To be exempted as an "executive" under the FLSA, an employee must (1) be paid on a "salary basis" at a statutory minimum based rate; (2) the employee's primary duty must be

management; (3) the employee must customarily direct work of at least two or more other full-time employees; and (4) the employee must have authority to hire or fire other employees, or the employee's suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees must be given particular weight.

55.     Plaintiff and the other similarly situated employees who were misclassified do not meet this test.  At all relevant times, Plaintiff and other similarly situated employees misclassified by Defendants as exempt did not have the primary duty of management.  The Department of Labor has defined management duties as including the following:  interviewing, hiring and training employees; assigning and directing the work of employees; giving feedback on performance and conducting reviews; responding to employee complaints; disciplining, demoting or firing employees; planning and controlling the budget; selecting and purchasing necessary tools and inventory; selecting the techniques to be used on the job; and planning for the safety of the employees.  Plaintiff and other similarly situated employees who were misclassified as managers performed none of these functions.

56.     Moreover, Plaintiff and other similarly situated employees who were misclassified as exempt by Defendants have not customarily directed the work of at least two or more full-time employees of Defendants and have not had the power to hire or fire employees and/or their suggestions and recommendations as to hiring, firing, advancement, promotion or any other change of status of other employees have not been given any particular weight by Defendants.

57.     Under the FLSA "outside sales" exemption, employees who work "in the capacity of outside salesman" are exempt from overtime pay requirements.  29. U.S.C. § 213(a).  The term "employed in the capacity of outside salesman" means an employee whose primary duties

are "making sales . . . or obtaining orders . . . and who is customarily and regularly engaged away from the employer's place or places of business." 29 C.F.R. § 541.500. "Making sales" under the FLSA means "any sale, exchange, contract to sell, consignment for sale; shipment for sale, or other disposition," 29 U.S.C. § 203(k). Promotional activity to assist in another company's sales, such as arranging merchandise on shelves or replenishing stock, is not an exempt activity. 29 C.F.R. § 541.503(c).

58.    Plaintiff and the other similarly situated employees who were misclassified as exempt do not meet the FLSA "outside sales" test. Plaintiff's primary duties were to stock customers shelves, cull defective product, clean store aisles and track inventory. Plaintiff was not responsible for making sales or obtaining orders from customers. At all relevant times, Plaintiff and other similarly situated employees did not have the primary duty of making sales or obtaining orders under the FLSA.

59.    Under the FLSA's administrative exemption, employees who work in a "bona fide. . . administrative. . . capacity" are exempt from overtime pay requirements. 29 U.S.C. § 213(a)(1). In order to qualify for the administrative exemption (1) the employee must be compensated on a salary or fee basis at a rate of not less than $684 per week as of January 1, 2020, exclusive of board, lodging, or other facilities; (2) the employee's "primary duty" must be the "performance of office or non-manual work directly related to the management or general business operations of the employer or the employer's customers"; and (3) the employee's primary duty must include "the exercise of discretion and independent judgment with respect to matters of significance." 29 C.F.R. § 541.200(a).

60.    Plaintiff and the other similarly situated employees who were misclassified as exempt do not meet the test for the FLSA "administrative exemption." Plaintiff's primary work

involved manual work, *i.e.,* stocking customers' shelves with millwork delivered to the customers' stores, culling defective millwork, cleaning aisles and checking inventory.

61.    Plaintiff's work duties were not directly related to the management or general business operations of Defendants or their customers.  To meet this requirement under the FLSA, an employee must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment. 29 C.F.R. § 541.201(a).  None of Plaintiff's work involved formulating or implementing management policies or operating Defendants' business.

62.    Plaintiff's primary duties, and the primary duty of other persons employed by Defendants in the positions titled "Account Service Manager" and "Area Service Support Manager" did not include the exercise of independent judgment and discretion with respect to matters of significance.

63.    Defendants' policy, pattern and/or practice of misclassifying employees as "managers" and therefore, exempt for payment of overtime wages, was pervasive.  Defendants' "Account Service Managers" and "Area Service Support Managers" covered customer accounts throughout the United States.  Upon information and belief, all Defendants' ASMs and ASSMs were similarly misclassified as "exempt."  Defendants' policy, pattern, and/or practice of mischaracterizing Defendants' "Non-Exempt" Employees as "Exempt", allowed Defendants to improperly reduce its labor costs and unfairly compete with Defendant's competitors, giving Defendants an unfair, improper and illegal competitive advantage to the detriment of Defendants' employees and business competitors.

64.     During the relevant time period, Defendants required Plaintiff and similarly situated employees to work hours for which they were not compensated.  Defendants did not compensate Plaintiffs for travel time greater than one hour from their homes to their first customer location on a workday, or travel time greater than one hour from their last customer location to their homes.  Defendants also did not compensate Plaintiffs for travel time between customer locations on the same workday.  Defendants did not compensate Plaintiffs for all travel time from their homes to their first customer location in their personal vehicles, between customer locations on the same workday, and from their last customer location to home, despite reimbursing Plaintiffs for all such mileage as business travel.

65.     During the relevant time period, Defendants scheduled Plaintiff to work forty (40) hours per week, but Plaintiffs regularly worked more than 40 hours per week and were not paid for the hours worked in excess of 40 hours per workweek.

66.     The number of hours Plaintiff and similarly situated current and former employees worked per week can be ascertained from Defendants' records.  At all relevant times, Plaintiffs and other similarly situated employees were required to swipe in and out of customer locations with a company supplied identification card.  In addition, at all relevant times, Plaintiffs and other similarly situated employees were required to log in and log out of Defendants' computer system using a company pass code on a company issued mobile device to access company email and other information and when working remotely on a computer with internet access.  Plaintiffs and similarly situated employees were also required to track their business related vehicle mileage to obtain reimbursement.  The vehicle mileage logs included the locations for all business related travel.

67.     Defendants assigned all of the work that Plaintiff and members of the putative ASSM Collective and New York Class performed and Defendants is aware of all of the work they performed.

68.     Throughout the relevant time period, Plaintiffs and the members of the putative ASSM Collective and New York Class performed "non-exempt" job duties.

69.     Throughout the relevant time period, the primary job duties of Plaintiff and all members of the putative ASSM Collective and New York Class did not include hiring, firing, disciplining, or directing the work of other employees, making sales or obtaining orders, or exercising independent judgment and discretion with respect to matters of significance.

70.     The primary job duties of Plaintiff and all members of the putative ASM Collective and New York Class did not materially differ from the duties of other non-exempt, hourly paid employees.

71.     Defendants' company-wide policy, patterns and/or practice of misclassifying its employees was knowing and intentional.  Upon information and belief, employees in the positions of ASM and ASSM complained to Defendants' that they should receive overtime compensation prior to September 2022.  Defendants refused to change the classification of the ASM and ASSM positions to pay overtime as required by FLSA and NYLL prior to September 2022.

72.     Pursuant to its centralized, company-wide policy, pattern and/or practice, Defendants misclassified Plaintiff and other similarly situated current and former employees as exempt from coverage of the overtime provisions of the FLSA and the NYLL.

## FLSA COLLECTIVE ACTIONS ALLEGATIONS

73.     Pursuant to 29 U.S.C. §§ 207 and 216(b), Plaintiff seeks to prosecute his FLSA misclassification and overtime claims as a Collective Action on behalf of all individuals who are or were employed by Defendants in the United States in the positions titled "Area Service Support Manager" and were not paid for all hours worked and/or their overtime hours at time and a half in violation of the FLSA.

74.     Defendants are liable under the FLSA for, *inter alia*, failing to pay proper overtime wages to Plaintiff and other similarly situated employees.

75.     There are many similarly situated current and former employees of Defendants who have not been paid proper overtime wages in violation of the FLSA and would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. Thus, notice should be sent to members of the Collectives pursuant to 29 U.S.C. § 216(b).

76.     The similarly situated employees are known to Defendants, are readily identifiable, and can be located through Defendants' records.

## NEW YORK CLASS ALLEGATIONS

77.     Plaintiff sues on his own behalf and on behalf of the New York Class, pursuant to Fed. R. Civ. P. 23(a), (b)(2) and (b)(3), defined as all current and former employees of Defendant in the state of New York in the positions titled "Account Service Manager" and "Area Service Support Manager" during the relevant statutory period.

78.     Defendant violated the NYLL and the regulations promulgated thereunder by failing to pay proper overtime wages to Plaintiff and other putative New York Class Members for hours in which they worked over 40 hours in a given work week.

79.     The New York Class is so numerous that joinder of all members is impracticable. Although the precise number of such persons is unknown, these similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

80.     Upon information and belief, there are at least 40 members of the New York Class.  Indeed, at all relevant times, Defendant has directed employees who reside in New York, New  Jersey and Connecticut to travel to New York when it deemed it necessary to service Defendant's customer accounts.

81.     There are questions of law and fact common to the members of the New York Class that predominate over any questions solely affecting the individual members of the New York Class.

82.     The critical question of law and fact common to Plaintiff and the New York Class that will materially advance the litigation is whether Defendant is required by the NYLL to pay Plaintiff and the New York Class at a rate of 1.5 times their regular hourly rate for hours worked in excess of forty (40) hours per week.

83.     Other questions of law and fact common to the New York Class that will materially advance the litigation include, without limitation:

a.     Whether Defendant employed Plaintiff and the New York Class Members within the meaning of NYLL;

b.     The nature and extent of the class-wide injury and the appropriate measure of damages for the Class when the employer fails in its duty to maintain time records;

c.     Whether Defendant had a policy of misclassifying "Account Service Managers" and "Area Service Support Managers" as exempt from coverage of the overtime provisions of the NYLL;

d.     Whether Defendant failed to pay Plaintiff and the New York Class the legally required amount of overtime compensation for hours worked in excess of 40 hours per workweek, in violation of the NYLL; and

e.      Whether Defendant is liable for all damage claimed by Plaintiff and the New York Class, including, without limitation, compensatory, liquidated and statutory damages, interest, costs and disbursements, and attorneys' fees.

84.     Plaintiff's claims are typical of the claims of the members of the New York Class.

85.     Plaintiff has the same interests in this matter as all other members of the New York Class.

86.     Plaintiff is an adequate class representative, is committed to pursuing this action and has retained competent counsel experienced in wage and hour law and class action litigation.

87.     Class certification of Plaintiff's NYLL claim is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the New York Class, making appropriate both declaratory and injunctive relief with respect to the New York Class as a whole.  The members of the New York Class are entitled to injunctive relief to end Defendant's common and uniform policy, pattern and/or practice of denying New York Class Members the wages to which they are entitled.

88.     Class certification of Plaintiff's NYLL claim is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the New York Class predominate over questions affecting only individual members of the New York Class, and because a class action is superior to other available methods for the fair and efficient adjudication of the litigation.

89.     Plaintiff knows of no difficulty that would be encountered in the management of this ligation that would preclude its maintenance as a class action.

## FIRST CAUSE OF ACTION

### FAIR LABOR STANDARDS ACT:
### Collective Action:  Unpaid Overtime Wages

90.     Plaintiff DURKEL, on behalf of himself and all members of the putative ASSM Collective repeat, reiterate and reallege each and every prior allegation as if they were set forth herein at length.

91.     At all relevant times, Defendants have been, and continue to be, an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 § U.S.C. 206(a) and 207(a).

92.     Defendants employed Plaintiff DURKEL, and employed and/or continues to employ, each of the putative ASSM Collective, within the meaning of FLSA.

93.     Defendants have engaged in a policy, pattern and/or practice of violating the FLSA, as detailed herein.

94.     Plaintiff has consented in writing to be a party to this action, pursuant to 29 U.S.C. § 216(b).

95.     The overtime wage provisions set forth in 29 U.S.C. §§ 201, *et seq*., apply to Defendants.

96.     At all relevant times, Defendants had a policy, pattern and/or practice of failing to pay overtime compensation to misclassified employees for hours that they had worked in excess of 40 hours per workweek.

97.     As a result of Defendants' willful failure to compensate its employees, including Plaintiff and the members of the putative ASSM Collective, at a rate not less than one and one-half times the regular rate of pay for work performed in excess of 40 hours in a workweek,

Defendants have violated and continues to violate the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C. § § 207(a)(1) and 215(a).

98.     As a result of Defendants' willful failure to record, report, credit and/or compensate its employees, including Plaintiff DURKEL and the putative members of the ASSM Collective, Defendants failed to make, keep and preserve records with respect to each of its employees sufficient to determine the wages, hours and other conditions and practices of employment in violation of the FLSA, 29 U.S.C. §§ 201, *et seq*., including 29 U.S.C §§ 211(c) and 215(a).  As a result of Defendants' FSLA violations, Plaintiff, on behalf of himself and the putative ASSM Collective, are entitled (a) to recover from Defendants their unpaid wages for all of the hours worked by them, as overtime compensation, (b) to recover an additional, equal amount as liquidated damages, and (c) to recover their unreasonably delayed payment of wages, reasonable attorneys' fees, and costs and disbursements of this action, pursuant to 29 U.S.C. § 216(b).

99.     Because Defendants' violation of the FLSA has been willful, a three-year statute of limitations applies, pursuant to 29 U.S.C. § 255.

## SECOND CAUSE OF ACTION

## NEW YORK LABOR LAW: UNPAID OVERTIME WAGES
(New York State Law Class Action)

100.     Plaintiff DURKE repeats, reiterates and realleges each and every allegation of the preceding paragraphs, as if they were set forth herein.

101.     At all relevant times, Plaintiff DURKEL and the New York Class Members were employed by Defendants within the meaning of the NYLL, and Defendants were an employer within the meaning of NYLL.

102.     The overtime wage provision of the NYLL and its supporting regulations

applyto Defendants.

103.    Defendants willfully violated Plaintiff DURKEL's and NewYork Class Members rights by failing to pay them the legally required amount of overtime compensation at rates not less than one and one-half times their regular rate of pay for all hours worked by them in excess of 40 hours in a workweek, in violation of the NYLL and its regulations.

104.    Defendant knew and/or showed reckless disregard that its conduct was prohibitedby the NYLL.

105.    As a result of Defendant's willful violations of the NYLL, Plaintiff DURKEL and the New York Class Members are entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees and costs of the action and pre- judgment and post-judgment interest, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to NYLL Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations

### THIRD CAUSE OF ACTION

### NEW YORK LABOR LAW: UNPAID OVERTIME WAGES
(New York State Law Individual Action)

106.    Plaintiff DURKEL repeats, reiterates and realleges each and every prior allegation as if they were set forth herein.

107.    At all relevant times, Plaintiff DURKEL was employed by Defendants within the meaning of the NYLL, and Defendants were an employer within the meaning of NYLL.

108.    The overtime wage provision of the NYLL and supporting regulations apply to Defendants.

109.    Defendants willfully violated Plaintiff DURKEL's  rights by failing to pay him the legally required amount of overtime compensation at rates not less than one and one-half times his regular rate of pay for all hours worked by him in excess of 40 hours in a workweek, in violation of NYLL and its regulations.

110.    Defendants knew and/or showed reckless disregard that their conduct was prohibited by the NYLL.

111.    As a result of Defendants' willful violations of the NYLL, Plaintiff DURKEL is entitled to recover from Defendant their unpaid wages, reasonable attorneys' fees and costs of the action and pre- judgment and post-judgment interest, including the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes, reasonable attorneys' fees and costs and disbursements of this action, pursuant to NYLL Article 6, §§ 190 et seq., and Article 19, §§ 650 et seq., and the supporting New York State Department of Labor regulations..

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, the ASSM Collective Members and the New York State Class Members are entitled to and pray for the following relief:

a)    Designation of this action as an FLSA collective action on behalf of Plaintiff Durkel and the members of the ASM Collective and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of the Collective, apprising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b), and tolling of the statute of limitations;

b)    Certification of the New York Class as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3), and the appointment of Plaintiff and his counsel to represent the members of the New York Class;

c)    A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the NYLL;

d)      An injunction requiring Defendants to cease its unlawful practices under the NYLL and comply with the law;

f)      An award of unpaid wages for all hours worked in excess of 40 in a workweek at a rate of one and one-half the regular rate of pay under the FLSA and the NYLL;

g)      An award of unpaid wages for all hours not properly compensated under the NYLL;

h)      An award of liquated damages pursuant to 20 U.S.C. § 216 and the NYLL;

i)      An award of damages representing the employer's share of FICA, FUTA, state unemployment insurance, and any other required employment taxes;

j)      An award of prejudgment and post-judgment interest;

k)      An award of costs and expenses of this action together with reasonable attorneys' fees; and

l)      Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Fed. R. Civ. P. 38 (b), Plaintiffs demand a trial by jury.

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify under penalty of perjury under the laws of the United States of America that to the best of my knowledge, this matter is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding. I understand that if the foregoing statement is willful false, I am subject to punishment.

Dated:  June 23, 2023

**LAW OFFICE OF ROOSEVELT N. NESMITH, LLC**

By: s/ Roosevelt N. Nesmith
       Roosevelt N. Nesmith, Esq.

400 Broadacres Drive, Suite 260 Suite 2C
Bloomfield, New Jersey 07003
Tel: (973) 259-6990
Fax: (866) 848-1368
*roosevelt@nesmithlaw.com*

Catherine E. Anderson, Esq.
**GISKAN SOLOTAROFF & ANDERSON LLP**
90 Broad Street, 2nd Floor
New York, NY 10004
Tel: (212) 847-8315
Fax: (646) 964-9620
*canderson@gslawny.com*

**THE MARKHAM LAW FIRM**
David R. Markham, Esq.
*dmarkham@markham-law.com*
 750 B Street, Suite 1950
San Diego, California 92101
Tel: (619) 399-3995
Fax: (619) 615-2067

*Attorneys for Plaintiff and the*
*Putative Collective and Class*